IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ELISABETH I. THIERIOT,

Plaintiff,

v.

BANK OF AMERICA, N.A., et al.,

Defendants.

Case No. 25-cv-07769-CRB

**ORDER GRANTING MOTION TO DISMISS**

Defendant Bank of America (BOA) moves to dismiss pro se Plaintiff Elizabeth Thieriot's second amended complaint (SAC) in this case about allegedly unauthorized withdrawals of funds from Thieriot's account(s).  See Mot. (dkt. 52); SAC (dkt. 51).  The Court recently vacated the motion hearing set for June 12, 2026, see Civil L.R. 7-1(b), and now GRANTS the motion as explained below.

## I.    BACKGROUND

This case has an extensive procedural history given its young age:

1. Thieriot brought suit in September 2025 and applied for a temporary restraining order.  See Compl. (dkt. 1); App. for TRO (dkt. 4).

2. The Court denied a TRO.  See Order denying TRO (dkt. 8).

3. Thieriot again applied for a TRO.  See 2nd App. for TRO (dkt. 13).

4. The Court again denied a TRO.  See Order denying 2nd App. for TRO (dkt. 14).

5. Thieriot filed a motion for reconsideration.  See Mot. for Reconsid. (dkt. 16).

6. The Court denied reconsideration. See Order denying Reconsid. (dkt. 17).

7. Thieriot responded to motions to dismiss the complaint by filing an improper amended complaint. See MTD BOA (dkt. 22); MTD Indiv. Defs. (dkt. 30); "Amended Complaint" (dkt. 41).

8. The Court held that the "Amended Complaint" did not comply with Rule 15 of the Federal Rules of Civil Procedure, struck that document, and held that the motions to dismiss remained pending. See Order re "Amended Complaint" (dkt. 42).

9. The Court then granted the motions to dismiss. See Order Granting MTDs (dkt. 44).

10. Thieriot filed a first amended complaint (FAC). See FAC (dkt. 45).

11. The Court then granted the motions to dismiss the FAC. See Order granting MTD FAC (dkt. 50). The Court explained that "Thieriot may file an amended complaint that includes TILA, FDCPA, civil RICO, and FCRA claims against BOA if she can do so in good faith given the authority cited herein and in BOA's motion." Id. at 2.

12. Thieriot filed a second amended complaint. See SAC.

Bank of America has now filed a motion to dismiss the SAC. See Mot. The motion is fully briefed. See Opp'n (dkt. 54); Reply (dkt. 57).

## II.    LEGAL STANDARD

Under Rule 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted. The Court may base dismissal on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019) (cleaned up). A complaint must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (cleaned up). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

United States District Court
Northern District of California

statements, do not suffice" to survive a 12(b)(6) motion.  Id. (citing Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007)).  When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party."  Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires."  Fed. R. Civ. Proc. 15(a)(2).  A court may deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 532 (9th Cir. 2008).

Courts must construe pro se pleadings liberally and hold such pleadings to a less stringent standard than those drafted by attorneys.  Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Hughes v. Rowe, 449 U.S. 5, 9 (1980) ("It is settled law that the allegations of [a pro se litigant's complaint] 'however inartfully pleaded' are held 'to less stringent standards than formal pleadings drafted by lawyers . . . .'") (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).  A court should dismiss a pro se complaint if "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment."  Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012).

### III.   DISCUSSION

BOA advances five bases for dismissal: (A) that the SAC asserts claims beyond those that the Court granted Thieriot leave to amend; (B) that the SAC fails to comply with Rule 8 of the Federal Rules of Civil Procedure; (C) that claim preclusion bars the claims related to unauthorized charges; (D) that the SOL has run on Thieriot's claims; and (E) that

3

the SAC fails to state a claim under TILA, Civil RICO, or the FCRA. BOA asks that dismissal be with prejudice.

### A.    Claims Beyond Those Permitted Leave to Amend

BOA first argues that the SAC asserts claims that go beyond those that the Court granted Thieriot leave to amend. See Mot. at 4. This is correct. The Court's order granting the previous motion to dismiss allowed Thieriot to "file an amended complaint that includes TILA, FDCPA, civil RICO, and FCRA claims against BOA if she can do so in good faith given the authority cited herein and in BOA's motion." Mot. at 2. The SAC includes claims for (1) "unauthorized electronic fund transfers," pursuant to 15 U.S.C. § 1693g; (2) "unauthorized use of credit," pursuant to 15 U.S.C §§ 1640 and 1643; (3) "billing errors," pursuant to 15 U.S.C. § 1666; (4) "false entries," pursuant to 18 U.S.C. § 1005 and 12 U.S.C. § 503; (5) "wire fraud," pursuant to 18 U.S.C. § 1343; (6) "racketeering," pursuant to 18 U.S.C. § 1962(c); and (7) "failure to investigate," pursuant to 15 U.S.C. § 1681s-2(b). See SAC at 7–9. Thieriot did not have leave to add the new EFTA, "false entries," or wire fraud claims to an amended complaint. And Thieriot did not respond to this argument in her opposition brief. Accordingly, the Court dismisses those new claims. See Mohamed v. Cnty. of Sacramento, No. 2:16-cv-01327-JAM-EFB, 2017 WL 772145, at *4 (E.D. Cal. Feb.. 28, 2017) (citing Synagogue v. United States, 482 F.3d 1058, 1060 n.4 (9th Cir. 2007)).

### B.    Rule 8

BOA next argues that the SAC fails to comply with Rule 8 of the Federal Rules of Civil Procedure. See Mot. at 5. The Court previously explained to Thieriot why her complaints ran afoul of Rule 8. See, e.g., Order Granting MTDs at 2 (explaining why "[t]he complaint here says both too little and too much"); Order granting MTD FAC at 2 ("the FAC on its own says 'too little' per Rule 8 of the Federal Rules of Civil Procedure . . . leaving the Court and BOA in the dark about the basis for Thieriot's claims."). BOA argues that Thieriot "repeats the same factual allegations multiple times—often verbatim— throughout the SAC without providing the factual specificity that Rule 8 demands." Mot.

4

at 5.  That is correct.

The SAC is repetitive.  See, e.g., SAC at 2 ("Plaintiff discovered the unauthorized withdrawals in January 2014 and terminated the autopay routing, and Defendant furnished derogatory credit information by approximately February 2014, resulting in credit contraction and denial."), id. at 3 ("Plaintiff discovered the unauthorized withdrawals in January 2014 and terminated the autopay routing, and Defendant furnished derogatory credit information by approximately February 2014, resulting in credit contraction and denial."), id. ¶ 2 ("All ledger entries, payment routing, and account actions described herein were created, maintained, and executed through Defendant's internally controlled systems"), id. ¶ 39 ("All ledger entries, payment routing, and account actions described herein were created, maintained, and executed through Defendant's internally controlled systems").

The SAC is also vague.  Although it is more specific than previous complaints in identifying which ledger entries Thieriot contends are invalid, see SAC ¶ 26 ("The ledger entries include: October 9, 2012 - $100,000.00"), the SAC still fails to allege necessary information that would put BOA on notice, such as which accounts those charges appeared on,[1] how and when Thieriot provided notice to BOA that she disputed the charges, and what billing error procedures Thieriot contends that BOA did not follow.  While Thieriot need not allege such matters with particularity, it is still too difficult to understand the basic facts and chronology of the events at issue.  Thieriot does not address this argument in her opposition brief, asserting instead that she complied with Iqbal and Twombly.  See Opp'n at 6.  The Court therefore dismisses the complaint pursuant to Rule 8.

---

[1] It is unclear what the relationship was between "Plaintiff's American Express/Virgin Atlantic credit account," SAC ¶ 6, and the "TD Ameritrade trust brokerage account," id. ¶ 5, even as characterized by BOA.  The SAC might be alleging that BOA improperly withdrew money from the closed American Express account in order to pay debts incurred by the brokerage account, or the reverse, see id. ¶ 10 ("Defendant used those internal ledger entries to initiate and process withdrawals from the TD Ameritrade trust brokerage account for which Plaintiff is trustee, constituting unauthorized electronic fund transfers"), but the complaint's causation is unclear.

United States District Court
Northern District of California

### C.   Claim Preclusion

BOA next argues that claim preclusion bars the SAC's claims related to unauthorized charges. See Mot. at 6. This is also true. The Court previously warned Thieriot that some of her claims could be subject to claim preclusion but that her allegations were not clear enough for the Court to make that determination. See Order Granting MTDs at 4 n.4 ("The Court adds that some additional claims might fail as to [BOA], because they could implicate claim preclusion. . . . The earlier state court litigation between Thieriot and [BOA] certainly ended in a final judgment on the merits against Thieriot."); Order granting MTD FAC at 2 n.2 ("BOA argues that Thieriot's claims might be barred by claim preclusion . . . but without adequate allegations, the Court cannot assess this."). BOA argues that "the SAC makes clear that Plaintiff's claims are predicated on the very same unauthorized charges that were the subject of the Prior Litigation." Mot. at 6. The Court agrees.

"Res judicata, or claim preclusion, prohibits lawsuits on 'any claims that were raised or could have been raised' in a prior action." Stewart v. United States Bancorp, 297 F.3d 953, 959 (9th Cir. 2002) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 713 (9th Cir. 2001)). "Res judicata applies when there is: '(1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties.'" Id. All three elements are met here.

#### 1.   Identity of claims

First, there is an identity of claims. The Court can take judicial notice of the filings in the previous litigation between the parties: Bank of America v. Thieriot, Case No. Civ 1901521 in the Superior Court of the State of California for the County of Marin. See RJN (dkt. 53).[2] In the previous litigation, BOA brought suit in 2019 against Thieriot, arguing

---

[2] Thieriot argues that "Defendant's reliance on judicial notice is improper and cannot be used to resolve disputed facts." See Opp'n at 2. But the Court is not looking at the filings in order to determine whether the ledger entries are valid or whether BOA appropriately withdrew funds from Thieriot's account(s); it is looking at the filings simply to determine whether the previous litigation was about the same thing as this litigation. See Stevenson v. Beard, No. 3:16-cv-03079-JLS-PCL, 2018 WL 1963674, at *5 (S.D. Cal. Apr. 26, 2018) ("A court may take judicial notice of its own files and of documents filed in other courts

United States District Court
Northern District of California

that she "failed to make periodic payments on the outstanding balance due" on her credit account. RJN (dkt. 53-1) Ex. A at 3. Thieriot filed a cross complaint, alleging that BOA breached the parties' contract by failing to notify her of "large and suspicious charges against her credit card in excess of $729,000 and, when [Thieriot] challenged the charges for lack of authorization, failed to investigate properly and charge back the funds against the merchant law firm." RJN Ex. B at 8. The cross complaint alleges that "In or about October 2011, [Thieriot] took out a credit card through Flying Club Virgin Atlantic for a Virgin Atlantic American Express card and entered into a contract to use a credit card for purchases and Services. [BOA] also entered into that same contract with [Thieriot] granting [Thieriot] the right to dispute billing errors to alert [BOA] of suspicious charges." Id. at 9. It goes on to say that BOA "processed several large and unusual charges against [Thieriot's] card while [she] was out of the country, but failed to notify [her] of possible unauthorized charges or fraud." Id. And, it alleges, Thieriot "had set up automatic pay of the credit card bill against her stock market account, which paid the charges as they arose." Id. Although the SAC does not reference a law firm charging Thieriot's credit card, it alleges that BOA allowed unauthorized withdrawals from her account without her authorization. SAC ¶¶ 18–20, 29; see also id. ¶ 26 ("The merchant identified on the ledger" appears to refer to the law firm). And it explains that "the total loss" was $729,000.00," id. ¶ 26, which is precisely the same amount she alleged that she was damaged in the previous litigation, see RJN Ex. B at 9 ("As a direct and proximate result of [BOA's] breach of contract, [Thieriot] has been damaged in the sum of $729,000 which [Thieriot] was required to pay based on [BOA's] refusal to reimburse the unauthorized charges").

Thieriot maintains that the previous litigation was about different matters. She alleges that "[t]he sums are different from Marin case discharge and claims here in Federal

---

for the purpose of determining whether a party's claims are barred by res judicata.") (citing Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006); Holder v. Holder, 305 F.3d 854, 866 (9th Cir. 2002)).

court," see SAC at 3, but the SAC repeatedly uses the same $729,000 sum, see id. ¶¶ 12, 26, id. at 7 ("resulting in loss of $729,000.00 and consequential financial harm.").  The main difference between the two cases is that the previous litigation involved state law claims of breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, and unjust enrichment, see RJN Ex. B at 8–11, while the SAC brings federal statutory claims, see SAC at 7–9.  But claim preclusion bars not only clams that were raised in a previous litigation but claims that could have been raised.  See Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg. Planning Agency, 322 F.3d 1064, 1077–78 (9th Cir. 2003).  Thieriot also argues that the SAC involves some facts ("post-closure account activity," "internal ledger-based transactions," "continued enforcement," and "collection ongoing financial harm") that "were not part of the prior litigation."  Opp'n at 7–8.  But these seem to be just assertions that the earlier harms are still harming her. Moreover, events following the previous litigation do not bear on the SAC's TILA, FCRA, or RICO claims, which are all based on withdrawals to Thieriot's account(s) based on invalid ledger entries.  See SAC at  7–8 (alleging in support of TILA claim that BOA withdrew funds without authorization, enforced charges through ledger entries on a closed credit account, and failed to correct improper charges); id. at 9 (alleging in support of FCRA claim that BOA "furnished information derived from internal ledger entries on a closed account and failed to conduct a reasonable investigation or correct inaccurate information"); id. at 8–9 (alleging in support of RICO claim that BOA "used those communications" "to enforce unauthorized ledger entries and withdrawals," "collect[ing] unauthorized obligations," and causing a "loss of $729,000.00.").[3]

The previous litigation was therefore about the same thing as the present litigation.

### 2. Final Judgment

Second, the state court in the previous litigation granted summary judgment for

---

[3] The RICO claim does allege that BOA's RICO conduct occurred "from 2012 through 2025," SAC at 9, but the allegations supporting that claim and the $729,000 sum contradict the allegation that the conduct continued through 2025.

United States District Court
Northern District of California

BOA. See RJN Exs. C, D.[4] Despite Thieriot's argument to the contrary, see Opp'n at 2 ("No final adjudication on the merits exists to support dismissal"), that is a final judgment for the purposes of res judicata, see Bullard v. Blue Hills Bank, 575 U.S. 496, 506 (2015) (order granting summary judgment is final); Stewart, 297 F.3d at 956 (dismissal with prejudice is final); see also Order Granting MTDs at 4 n.4 ("The earlier state court litigation between Thieriot and [BOA] certainly ended in a final judgment on the merits against Thieriot.").

### 3.    Identity of Parties

Third, there is identity between the parties: Thieriot and BOA are the parties in each. Compare SAC; RJN Exs. A–D.

Accordingly, claim preclusion bars the TILA, FCRA, and RICO claims.

### D.    SOL

BOA next argues that the relevant statutes of limitations bar Thieriot's claims. See Mot. at 8. The Court previously noted this issue. See Order granting MTD FAC at 2 n.2 ("BOA argues that Thieriot's claims . . . might run afoul of the statute of limitations, but without adequate allegations, the Court cannot assess this."). The Court now agrees with BOA.

The SAC alleges that BOA "created internal ledger entries in[a] closed account and recorded those entries as transactions" between October 9, 2012 and October 31, 2013," SAC ¶ 8, and that Thieriot "discovered the unauthorized withdrawals in January 2014," id. at 2. Although Thieriot brought cross complaint about these matters in 2020, see RJN Ex. B, she did not bring this case until September of 2025, see Compl. The statute of limitations for her TILA claim is one year. See 15 U.S.C. § 1640(e). The statute of limitations for her FCRA claim is two years. See 15 U.S.C. § 1681p(1). The statute of limitations for her civil RICO claim is four years. See Agency Holding Corp. v. Malley-

---

[4] This exhibit is actually a filing entitled "Final judgment after order granting motion for summary adjudication in favor of [BOA] on the complaint and order granting motion for summary adjudication in favor of [BOA] on Thieriot's cross-complaint." RJN Ex. D at 35.

Duff & Assocs., Inc., 483 U.S. 143, 146 (1987).  Even starting the clock on Thieriot's claims at the date when she discovered the unauthorized withdrawals, her claims, brought in 2025, are untimely.

Thieriot insists that the "statute of limitations arguments are premature and legally insufficient," see Opp'n at 2, because the untimeliness of her claims is not "apparent on the face of the complaint," id. at 13.  Not so: her TILA, FCRA, and civil RICO claims all relate to BOA conduct in 2012 and 2013.  See SAC at 7–9.  Thieriot insists that her "claims are based on ongoing and repeated conduct," including "collection demands extending unto 2025 and 2026."  Opp'n at 13.  But, as discussed above, the allegations that actually support her TILA, FCRA, and RICO claims all occurred long ago.  See SAC at 7–8 (alleging in support of TILA claim that BOA withdrew funds without authorization, enforced charges through ledger entries on a closed credit account, and failed to correct improper charges); id. at 9 (alleging in support of FCRA claim that BOA "furnished information derived from internal ledger entries on a closed account and failed to conduct a reasonable investigation or correct inaccurate information"); id. at 8–9 (alleging in support of RICO claim that BOA "used those communications" "to enforce unauthorized ledger entries and withdrawals," "collect[ing] unauthorized obligations," and causing a "loss of $729,000.00.").  Later actions taken by BOA are not the basis for those TILA, FCRA, or civil RICO claims, see id. at 7–9, nor are they the same actions for the purposes of the continuing violation doctrine, see Green v. Los Angeles Cnty. Superintendent of Schs., 883 F.2d 1472, 1480–81 (9th Cir. 1989) (explaining continuing violation doctrine); Teva Pharmaceuticals USA, Inc. v. Concept Therapeutics, Inc., No. 24-cv-03567-NW, 2025 WL 2637507, at *6 (N.D. Cal. 2025) ("In the Ninth Circuit, an overt act restarts the statute of limitations if it . . . is 'a new and independent act that is not merely a reaffirmation of a previous act'") (quoting Pace Indus., Inc. v. Three Phoenix Co., 813 F.2d 234, 237 (9th Cir. 1987); SAC at 3 ("Defendant's conduct continued after the Marin matter, including interference with securities transfers in 2024–2025 and closure of Plaintiff's account in 2025, constituting independent and subsequent acts causing

10

additional harm.") (emphasis added).

Finally, Thieriot argues that equitable tolling should apply because the relevant facts were within BOA's control. See Opp'n at 15. But Thieriot knew that BOA had made "unauthorized withdrawals . . . in January 2014," see SAC at 2, even if she did not know everything about why or how BOA made those withdrawals. "[T]his is not a case where the plaintiff was injured within the limitations period yet unable to determine the source of [her] injury." See Garcia v. Brockway, 526 F.3d 456, 465 n.8 (9th Cir. 2008); see also Gill v. Gen. Svcs. Admin., No. 14-cv-02999-MEJ, 2014 WL 6469377, at *4 (N.D. Cal. Nov. 18, 2014) (no equitable tolling where plaintiff had sufficient information to know possible existence of claim) (citing Santa Maria v. Pac. Bell, 202 F.3d 1170, 1179 (9th Cir. 2000)).

The statutes of limitations therefore bar Thieriot's claims.

### E.    Failure to State a Claim

Finally, BOA argues that the SAC fails to state a claim under TILA, the FCRA, and Civil RICO. See Mot. at 9. This is also true.

#### 1.    TILA

The SAC alleges that BOA violated 15 U.S.C. §§ 1640, 1643, and 1666. See SAC at 7–8. Section 1640 is the general civil liability statute, so Thieriot must state a claim under sections 1643 and 1666.

Under section 1643, a cardholder is liable for the unauthorized use of a credit card if, among other things, "the unauthorized use occurs before the card issuer has been notified that an unauthorized use of the credit card has occurred or may occur as the result of loss, theft, or otherwise." 15 U.S.C. § 1643. The SAC does not allege that Thieriot ever notified BOA of the loss or theft of a credit card. See SAC at 7–8.

Under section 1666, a plaintiff must plead "(1) the existence of a billing error, (2) timely notification of the billing error, and (3) failure of he bank issuing the card to comply with the procedural requirements." Reger v. Bank of Am., N.A., No. 2:21-CV-00910-BAT, 2021 WL 4263746, at *4 (W.D. Wash. Sept. 20, 2021). The required notice to be

provided from an obligor to a creditor must "(1) identify the obligor's name and account number; (2) indicate the obligor's belief that the account statement contains a 'billing error' and the amount of such billing error; and (3) set forth the reasons for the obligor's belief that the statement contains a billing error." Id. (citing 15 U.S.C. § 1666(a)(1)–(3)). The obligor must submit the dispute notice within sixty days of receiving the erroneous statement. Id. Notice must be in writing and sent to the address disclosed under section 1637(b)(10). Id. The SAC alleges that Thieriot "notified Defendant and disputed the transactions," SAC ¶ 51, but not what form the notice took, whether notice was within 60 days, or even if "the transactions" at issue were billing errors.

The opposition brief does not address this issue. See Opp'n. Accordingly, the Court dismisses the TILA claim.

### 2.     FCRA

The SAC alleges that BOA "furnished information derived from internal ledger entries on a closed account and failed to conduct a reasonable investigation or correct inaccurate information upon dispute." SAC at 9. To state a claim for a violation of the FCRA, a plaintiff must allege that: "'(1) he found an inaccuracy in his credit report; (2) he notified a credit reporting agency; (3) the credit reporting agency notified the furnisher of the information about the dispute; and (4) the furnisher failed to investigate the inaccuracies or otherwise failed to comply with the requirements of 15 U.S.C. § 1681s–2(b)(1)(A)–(E).'" Biggs v. Experian Info. Sols., 209 F. Supp. 3d 1142 (N.D. Cal. 2016) (quoting Corns v. Residential Credit Solutions, Inc., No.: 2:15–cv–1233–GMN–VCF, 2016 U.S. Dist. LEXIS 27864, at *4 (D. Nev. Mar. 3, 2016)). The SAC fails to allege that Thieriot found an error in her credit report (as opposed to her bank account), that she notified a credit reporting agency, or that a credit reporting agency notified BOA. The SAC therefore fails to state a claim under the FCRA. See Smith v. Experian Info. Sols., Inc., No. 16-cv-04651-BLF, 2017 WL 1489689, at *8 (N.D. Cal. Apr. 26, 2017) ("Plaintiff's conclusory allegation that Experian 'failed to conduct a reasonable investigation,' . . . is inadequate to state a claim under the FCRA.").

12

In addition, the opposition brief does not address this issue.  Accordingly, the Court dismisses the FCRA claim.

### 3.    Civil RICO

The SAC alleges that "Defendant's conduct constitutes wire fraud under 18 U.S.C. § 1343 and a pattern of racketeering activity under 18 U.S.C. § 1862(c).  Defendant used those communications to enforce unauthorized ledger entries and withdrawals" and "engaged in repeated conduct using internal ledger entries and banking systems to create, enforce, and collect unauthorized obligations, constituting a pattern of racketeering activity."  SAC at 8–9.

For a civil RICO claim, a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Odom v. Microsoft Corp., 486 F.3d 541, 547 (9th Cir. 2007) (en banc).  "Rule 9(b)'s requirement that '[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity' applies to civil RICO fraud claims."  Edwards v. Marin Park, Inc., 356 F.3d 1058, 1065–66 (9th Cir. 2004) (internal citation omitted).

The SAC's allegations fail because they are conclusory and lack specificity.  The SAC does not allege what "those communications" were, who had them, or when they occurred.  See SAC at 9.  Nor does it sufficiently allege the existence of an enterprise.  In conclusory fashion, it simply alleges "a pattern of conduct spanning multiple years, including unauthorized ledger postings, trust withdrawals, credit reporting, and securities interference" and then declares that "[t]hese allegations establish enterprise conduct, pattern, and continuity."  Id. at 13.  That is insufficient.  Nor does the SAC allege, as it must, a "common purpose of engaging in a course of conduct," an "ongoing organization," or support for the notion that "the associates in function as a continuing unit."  See Vaughn v. Wardhaugh, No. 23-CV-02879-RFL, 2025 WL 251694, at *2 (N.D. Cal. Jan. 1, 2025).  Moreover, "cases which allege only one scheme, perpetrated on one victim, are usually insufficient to establish a pattern."  Menjivar v. Trophy Props. IV DE, LLC, No. C 06-03086 SI, 2006 WL 2884396, at *9 (N.D. Cal. Oct. 10, 2006).  As Thieriot only names

United States District Court
Northern District of California

herself as the victim of a single scheme, she has not demonstrated a pattern.

In addition, the opposition brief does not address this issue.  Accordingly, the Court dismisses the civil RICO claim.

## IV.     CONCLUSION

For the foregoing reasons, the Court GRANTS the motion.  As Thieriot has received multiple opportunities to amend and it now appears that further amendment would be futile, dismissal is with prejudice.  See Leadsinger, 512 F.3d at 532.

**IT IS SO ORDERED.**

Dated: June 10 , 2026

_____
CHARLES R. BREYER
United States District Judge

United States District Court
Northern District of California